ORIGINAL

Approved: _____
VLADISLAV VAINBERG
Assistant United States Attorney

Before:   THE HONORABLE SARAH NETBURN
          United States Magistrate Judge
          Southern District of New York

19MAG 8273

- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA            :   SEALED COMPLAINT

         - v. -                     :   Violations of 18 U.S.C.
                                        §§ 1343, 1349 and 2,
KIZZITO CHUKWUJEKWU,                :
    a/k/a "Jerry Martins,"              COUNTY OF OFFENSE:
                                    :   NEW YORK
         Defendant.
                                    :
- - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

   MICHAEL RYAN, being duly sworn, deposes and says that he is a Special Agent with the Federal Bureau of Investigation ("FBI") and charges as follows:

## COUNT ONE
(Conspiracy to Commit Wire Fraud)

   1.   From at least in or about 2017 through at least in or about 2018, in the Southern District of New York and elsewhere, KIZZITO CHUKWUJEKWU, a/k/a "Jerry Martins," the defendant, and others known and unknown, willfully and knowingly, did combine, conspire, confederate, and agree together and with each other to commit wire fraud, in violation of Title 18, United States Code, Section 1343.

   2.   It was a part and object of the conspiracy that KIZZITO CHUKWUJEKWU, a/k/a "Jerry Martins," the defendant, and others known and unknown, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, CHUKWUJEKWU received, transferred, and

withdrew funds fraudulently obtained from companies (the "Victim Companies") who were induced to send the funds through email communications impersonating employees, customers, or vendors of the Victim Companies.

(Title 18, United States Code, Sections 1349 and 2.)

## COUNT TWO
(Wire Fraud)

3. From at least in or about 2017 through at least in or about 2018, in the Southern District of New York and elsewhere, KIZZITO CHUKWUJEKWU, a/k/a "Jerry Martins," the defendant, willfully and knowingly, having devised and intending to devise a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises, would and did transmit and cause to be transmitted by means of wire, radio, and television communications in interstate and foreign commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, to wit, CHUKWUJEKWU participated in business email compromise scams through which he received, transferred, and withdrew funds obtained from fraudulently obtained from the Victim Companies who were induced to send the funds through email communications impersonating employees, customers, or vendors of the Victim Companies.

(Title 18, United States Code, Sections 1343 and 2.)

The bases for deponent's knowledge and for the foregoing charges are, in part, as follows:

4. I am a Special Agent with the FBI and I have been personally involved in the investigation of this matter. I base this affidavit on that personal experience, as well as on my conversations with other law enforcement agents and other individuals, my review of email communications, and my examination of various reports and records. Because this affidavit is being submitted for the limited purpose of establishing probable cause, it does not include all the facts that I have learned during the course of my investigation. Where the contents of documents and the actions, statements and conversations of others are reported herein, they are reported in substance and in part, except where otherwise indicated. Where dates, figures, and calculations are set forth herein, they are approximate.

### Overview of the Scheme to Defraud

5.      From at least in or about 2017 through in or about 2018, KIZZITO CHUKWUJEKWU, a/k/a "Jerry Martins," the defendant, a co-conspirator not named herein ("CC-1"), and other co-conspirators, known and unknown, participated in Business Email Compromise scams ("BEC scams") targeting victims in the United States.  As part of the BEC scams, emails were sent to employees of the Victim Companies directing that funds be transferred to specified bank accounts.  The emails purported to be from other employees or customers of those Victim Companies, or third party vendors that did business with those Victim Companies.  The emails, however, were not legitimately sent by those persons. Rather, they were sent by scheme participants who either compromised the senders' email accounts or used email accounts with a very similar domain name.  After victims complied with the fraudulent wiring instructions in those emails, the transferred funds were quickly withdrawn or moved into different bank accounts.  In total, the BEC scams attempted to defraud hundreds of thousands of dollars from victims.

### Company-1 BEC Scam

6.      Based on my review of emails, bank records, and statements of employees of a construction company located in Pennsylvania ("Company-1"), I have learned the following:

   a.      On or about January 10, 2018, an employee ("Employee-1") of Company-1 received an email ("Email-1") that appeared to be from an employee of another company vendor to Company-1 ("Vendor-1").  Email-1 requested that Company-1 remit $177,546.81 it owed to Vendor-1.  Email-1 also included details regarding a bank account at a particular bank ("Bank-1") ending in the digits 3074 ("Account-1") into which the wire transfer should be made.  Employee-1 later determined that Email-1 was not sent by an employee of Vendor-1, but instead was sent from a domain name matching Vendor-1's email domain except for a single missing letter.[1]

   b.      On or about January 10, 2018, having been induced by Email-1, Employee-1 directed a wire transfer of $177,546.81 from Company-1 to Account-1.

---

[1] An email domain is the part of the email address that follows the @ symbol, such as the domain "example.com" in the hypothetical email address "user@example.com".  Domain names, including highly similar domains to existing ones, can be registered by companies and individuals for a fee.

3

c. Based on my review of records from Bank-1, I have learned that Account-1 was opened on or about December 14, 2017 in the name of "Martins Jerry Management LLC," rather than Vendor-1's name. The sole signatory on Account-1 was listed as "Jerry Martins." Through on or about January 10, 2018, the balance in Account-1 never exceeded $800.

d. On or about January 11, 2018, the day after the funds were fraudulently transferred to Account-1, an individual representing himself as "Jerry Martins" issued five cashier checks from Account-1 totaling $160,400. Three of the checks, in amounts of $45,000 ("Check-1"), $40,000 ("Check-2"), and $35,400 ("Check-3"), totaling $120,400 were made out to "Bowmoles." The other two checks, in the amounts of $30,000 ("Check-4") and $10,000 ("Check-5"), were made out to "Kizzito Chukwujekwu."

7. Based on my review of bank and other records specified below, I have learned that Check-1, Check-2, and Check-3 were promptly thereafter transferred into accounts controlled by CC-1 as follows:

a. On or about February 6, 2018, Check-1, made payable to "Bowmoles" was deposited in an account at a particular credit union bank ("Bank-2") ending in digits 9702 ("Account-2") on or about February 6, 2018. Account-2 was opened one day earlier, on or about February 5, 2018, with a $100 deposit, by CC-1. Check-2 and Check-3 were deposited in Account-2 on or about February 20, 2018 and March 1, 2018, respectively.

b. From in or about February 2018, through in or about April 2018, all or nearly all of the funds deposited from Check-1, Check-2, and Check-3 into Account-2 were disbursed in a variety of ways, including cash withdrawals, checks to another individual, and transfers to another account in the name of CC-1 at Bank-2 ending in the digits 2002 ("Account-3"), and payments to nightclubs and a luxury auto dealership. Account-2 also received other deposits that were also substantially disbursed by April 2018.

8. Based on my review of bank and other records specified below, I have learned that Check-4 and Check-5 were transferred into accounts controlled by KIZZITO CHUKWUJEKWU, a/k/a "Jerry Martins," the defendant, as follows:

a. On or about January 11, 2018, the day after funds were fraudulently transferred from Company-1 into Account-1, Check-4, drawn from Account-1 and made out to "Kizzito Chukwujekwu" for $30,000, was deposited into in an account at a particular bank ("Bank-3") ending in digits 2355 ("Account-4"). Account-4 was

4

opened on or about December 20, 2017. The sole signatory on Account-4 is "Kizzito Chukwujekwu" with a given address in Brooklyn, New York. Prior to receiving the Check-4 deposit, Account-4 never had a balance above approximately $100. Between in or about January 19 and 25, 2018, approximately $28,100 was withdrawn from Account-4.

   b. Also, on or about January 11, 2018, Check-5, drawn from Account-1 and made out to "Kizzito Chukwujekwu" for $10,000, was deposited into in an account at a particular bank ("Bank-4") ending in digits 5433 ("Account-5"). Account-5 was opened on or about December 20, 2017. The sole signatory on Account-5 is "Kizzito Chukwujekwu" with a given address in Brooklyn, New York. Prior to receiving the Check-5 deposit, Account-5 never had a balance above approximately $200. Between in or about January 16 and 19, 2018, approximately $9,500 was withdrawn from Account-5 through debit card purchases and cash withdrawals. Account-5 received other deposits and withdrawals subsequent to January 11, 2018.

   c. Based on my review of New York State Department of Motor Vehicle records, I know that CHUKWUJEKWU possesses a New York driver's license in the name of "Kizzito Chukwujekwu" with an address in Brooklyn, New York. Based on my review of bank records, I have learned that CHUKWUJEKWU presented that driver's license to confirm his identity to open Account-4 and Account-5, and provided the same driver's license ID to law enforcement in April 2018 following a state arrest on another offense.

   d. I have reviewed surveillance videos and images from the deposit of Check-4 made by "Kizzito Chukwujekwu" into Account-4 on or about January 11, 2018 and withdrawals made by "Kizzito Chukwujekwu" from Account-4 on or about January 19 and 24, 2018, and deposits made by "Kizzito Chukwujekwu" to Account-5 on or about January 11 and 12, 2018. The visual appearance of the individual making these deposits and withdrawals matches the photo and age, sex, and height description of CHUKWUJEKWU on his New York driver's license.

### Company-2 BEC Scam

 9. Based on my review of emails, and statements of employees of an aviation company located in Minnesota ("Company-2"), as well as various bank records, I have learned the following:

   a. In or about January 2018, the email account of an employee ("Employee-2") of Company-2 was compromised to auto-delete incoming emails from a representative of Company-2's bank

5

("Company-2's Bank"). At around the same time, the same representative at Company-2's Bank received a series of emails purportedly coming from Employee-2 but actually being sent from a different domain (collectively, "Email-2"), that was designed to be deceptively similar to the authentic domain for Company-2. Email-2 requested for payments to be made to a Bank-1 account ending in digits 4068 in the name of "Bowmoles." ("Account-6").

    b. As induced by Email-2, Company-2's Bank executed the following wire transfers from Company-2's account to Account-6: $47,870 on or about January 8, 2018, and $98,356 on or about January 12, 2018, for a total of approximately $146,226.

    c. An analysis of one of the emails comprising Email-2 indicates that the originating IP address that sent the email was based in Nigeria.

    d. Account-6 was opened on or about November 21, 2017. The name on the account is CC-1's name doing business as "Bowmoles" and the sole signatory is CC-1. Based on my review of bank records, I have learned that CC-1 presented his New York driver's license to confirm his identity to open Account-6. Prior to receiving the first Company-2 wire, Account-6 had a balance of less than $3,000.

    e. Between on or about January 8, 2018, the date of the first wire transfer from Company-2, and on or about February 20, 2018, CC-1 withdrew all funds, including by transferring a net amount of approximately $18,990 to a Bank-1 account in CC-1's name ending in digits 7221 ("Account-7").

    f. I have reviewed surveillance videos and images from transactions made by an individual from Account-6 on or about January 11, and 16, 2018. The visual appearance of that individual matches the photo and age, sex, and height description of CC-1 on his driver's license, as well as the individual making deposits and withdrawals into Account-2 and Account-3 at Bank-2.

### Company-3 BEC Scam

10. Based on my and other law enforcement officers' review and analysis of emails and statements of employees of an investment firm located in Nassau County, New York, ("Company-3"), as well as various bank records, I have learned the following:

    a. On or about January 11, 2018, an employee of Company-3 ("Employee-3") received an email ("Email-3") from another employee of Company-3 ("Employee-4") requesting, in part and

substance, that $78,210 be sent to a particular bank ("Bank-5") account in the name of "Jerry Martins Management LLC" and ending in digits "2796" ("Account-7") to pay off a loan for the benefit of the owner of Company-3.

        b. According to a representative of Company-3, Employee-4 did not draft of authorize Email-3, which originated from an IP address located in Nigeria. Accordingly, based on my training and experience, and my familiarity with this investigation, I believe that Employee-4's account was compromised.

        c. As induced by Email-3, employees of Company-3 made a $78,210 wire transfer to Account-7 on or about January 11, 2018.

        d. Based on my review of Bank-5 records, I have learned that Account-7 was opened on or about December 14, 2017 and that "Jerry Martins" is its sole signatory. At the time of the January 11, 2018 wire transfer from Company-3, Account-7 had a balance less than approximately $200. Between January 12 and 16, 2018, the individual representing himself as "Jerry Martins" withdrew approximately $28,800 in cash from Account-7.

### Company-4 BEC Scam

11. Based on my review of bank records, emails and statements of employees of a real estate development company located in Westchester County, New York, ("Company-4"), as well as various bank records, I have learned the following:

        a. Between on or about January 22, 2018, and January 30, 2018, an employee ("Employee-5") of Company-4 received emails (collectively, "Email-4") purportedly from an employee ("Employee-6") at a contracting firm ("Vendor-2") with whom Company-5 did business. One of the emails instructed Employee-5 to send payment of $258,811.65 to a Bank-3 bank account in the name of "Martins Jerry Management LLC" ending in digits 1480 ("Account-8"). It was later determined that Email-4 had not come from Employee-6 or that employee's email account, but from a substantially similar email address created by a third party.

        b. As induced by Email-4, employees of Company-4 wire transferred approximately $258,811.65 into Account-8 on or about January 26, 2018.

        c. Based on my review of Bank-3 bank records, I have learned that Account-8, like Account-1 and Account-7, was opened on or about December 14, 2017 and that "Jerry Martins" is its sole signatory. The individual opened this account by presenting a

purported Nigerian passport ("Passport-1").  Based on my review of law enforcement databases, I have found no record indicating that any individual entered into the United States using Passport-1, indicating that it is likely a counterfeit passport.

        d.    At the time of the January 26, 2018 wire transfer from Company-4, Account-7 had a balance of less than approximately $200.  Between January 26, 2018 and January 30, 2018, the individual representing himself as "Jerry Martins" withdrew substantially all of the funds in wire transfers, cashier's checks, and cash withdrawals, including an $8,000 cash withdrawal on January 30, 2018.

        e.    I have reviewed bank surveillance photos showing (1) the person identifying themselves as "Jerry Martins" withdrawing $8,000 from Account-8 on January 30, 2018, and (2) the person identifying themselves as "Kizzito Chukwujekwu" withdrawing $2,158 from Account-4 on the same day.  The appearance of both individuals is substantially identical.

### Company-5 BEC Scam

12.  Based on my reviews of statements of employees at a financial services company headquartered in New York, New York ("Company-5"), review of emails, bank records and other reports, I have learned the following:

        a.    On or about June 14, 2017, employees at Company-5 received an email ("Email-5") purportedly from a customer of Company-5 ("Customer-1") attaching a fund transfer authorization form seemingly signed by Customer-1.  Email-5 requested that that $54,102 be transferred to Customer-1's other account at a particular bank ("Bank-6") ending in digits 2377 ("Account-9").  Email-5 included voided checks from the Bank-6 account as proof of Customer-1's ownership of that account.

        b.    Based on statements made by a representative of Company-5 on behalf of Customer-1, I have learned that Customer-1 did not maintain the referenced account at Bank-6, did not draft or authorize Email-5, and did not sign the fund transfer authorization form attached to Email-5.  Customer-1 did not authorize the transfer requested therein to be made.

        c.    As induced by Email-5, Company-5 transferred $54,102 of Customer-1's funds into Account-9 on or about June 16, 2017.

        d.    Based on my review of Bank-6 records, I have learned that the owner of Account-9 is not Customer-1, but rather the

individual named "Kizzito Chukwujewku" with a listed address in Brooklyn, New York.

   e. At the time of Company-5's deposit on June 16, 2017, Account-9 had a negative cash balance. KIZZITO CHUKWUJEKWU, a/k/a "Jerry Martins," the defendant, then withdrew approximately $48,900 of these funds in three checks, including a $42,000 check made out to himself.

   f. CHUKWUJEKWU cashed the $42,000 check at a bank account in Bank-5 ending in the digits 5583 ("Account-10") on or about June 27, 2017. Account-10 was opened on the same date. Its sole signatory is "Kizzito Chukwujekwu" with an address in Brooklyn, New York. Between approximately June 27, 2017 and July 5, 2017, KIZZITO CHUKWUJEKWU, the defendant, withdrew approximately $41,303 from Account-10 in cash.

  WHEREFORE, deponent respectfully requests that a warrant be issued for the arrest of KIZZITO CHUKWUJEKWU a/k/a "Jerry Martins" the defendant, and that he be imprisoned or bailed, as the case may be.

_____
MICHAEL RYAN
Special Agent
Federal Bureau of Investigation

Affirmed to before me this
3 day of September 2019

_____
THE HONORABLE SARAH NETBURN
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

9